IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSE DIVISION

DAVID ALLEN,

       Petitioner,

v.                                      CASE NO. 4:15-cv-74-MW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by fling a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his September 2007 jury-trial conviction in Madison County of robbery with a weapon, battery, and grand theft, for which he received a 60-year sentence. (ECF No. 1 at 1.) On April 3, 2015, Respondent filed the instant Motion to Dismiss Petition for Habeas Corpus as Untimely. (ECF No. 8.) Following two Motions for Extension of Time, ECF Nos. 11, 15, both of which the Court granted, ECF Nos. 12, 16, Petitioner filed a response in opposition, ECF No. 17. Thus, the motion is ripe for review. For the following reasons, the undersigned recommends that the motion to dismiss be granted and the Petition be dismissed.

## State-Court Proceedings

The procedural background of this case is established by the state court records appended to the Respondents' motion. (ECF No. 8.) In September 2005, the State charged Petitioner with robbery while armed with firearm or deadly weapon, aggravated battery with deadly weapon, and grand theft. (ECF No. 8-1 at 365–66.) A jury subsequently found Petitioner guilty of the lesser included offense of robbery with a

weapon, the lesser included offense of battery, and grand theft as charged. (*Id.* at

350–51.) The Court sentenced Petitioner to sixty (60) years for robbery with a weapon,

with the first thirty (30) years served fully as a prison releasee reoffender, time served

on the battery count, and five (5) years to be served concurrent for grand theft, with a

ten (10) year minimum for firearm use. (*Id.* at 320–22.) On September 16, 2008, the

First District Court of Appeals ("First DCA") affirmed per curiam without opinion, and the

mandate followed on October 2, 2008. (ECF No. 8-2 at 62–63.)

On November 28, 2008, Petitioner submitted for mailing a motion to correct an

illegal sentence pursuant to Rule 3.800(a)(b)(2). (*Id.* at 76–82.) Petitioner subsequently

filed a motion to voluntarily dismiss his November 28, 2008 motion on December 31,

2008, which the Court granted on January 23, 2009. (ECF No. 8-3 at 9–11.)

On July 13, 2009, Petitioner filed a motion to correct sentence pursuant to Rule

3.800(a). (ECF No. 8-2. at 94–107.)[1] On August 11, 2009, Petitioner filed a motion for

post-conviction DNA testing pursuant to Rule 3.853. (*Id.* at 108–10.)[2] Then on March

11, 2010, Petitioner submitted for mailing a motion for post-conviction relief pursuant to

---

[1] Petitioner's July 13, 2009 motion to correct sentence pursuant to Rule 3.800(a) was filed without indicating the date that it was given to prison officials for mailing. (*Id.*) However, the motion's Certificate of Service indicates that "a true and correct copy of the foregoing Motion to Correct Sentence has been furnished to the Office of the State Attorney at Post Office Box 1546, Live Oak, FL 32064 on this 13 day of July, 2009." (*Id.* at 107.)

[2] Petitioner's August 11, 2009 motion for post-conviction DNA testing pursuant to rule 3.853 was filed without indicating the date that it was given to prison officials for mailing. (*Id.*) However, the motion's Certificate of Service indicates that "a true and correct copy of this Motion For Post conviction DNA Testing has been furnished to the State Attorney's Office at P.O. Drawer 1546: Live Oak, Fla. 32064 and the Clerk of Court at 100 court St. S.E.: Live Oak, Fla. 32064 this 11 day of August, 2009." (*Id.* at 110.)

Rule 3.850. (*Id.* at 119–83.) The circuit court summarily denied all four of these motions in a single order on September 15, 2010. (*Id.* at 222–35.) The First DCA affirmed without opinion on April 8, 2011, and the mandate issued on July 22, 2011. (ECF No. 8-3 at 26–22.)

On September 13, 2011, Petitioner submitted for mailing a motion to correct illegal sentence, which the circuit court summarily denied on October 7, 2011. (*Id.* at 32–37.) The First DCA affirmed on February 24, 2012, and the mandate issued on March 21, 2012. (*Id.* at 78–79.) Petitioner subsequently submitted for mailing a motion to recall the mandate on June 15, 2012, which was denied on June 26, 2012. (*Id.* at 80–87.)

On October 31, 2011, Petitioner submitted for mailing an amended motion for post-conviction relief pursuant to Rule 3.850, which the circuit court summarily denied on November 30, 2011. (*Id.* at 108–128.) The First DCA affirmed on February 22, 2012, and issued the mandate on March 20, 2012. (*Id.* at 217–18.)

On April 5, 2012, Petitioner submitted for mailing a motion to correct illegal sentence under Rule 3.800(a), which the circuit court denied on April 26, 2012. (*Id.* at 222–29.) The First DCA affirmed on August 1, 2012, and issued the mandate on August 28, 2012. (*Id.* at 234–35.)

On October 16, 2012, Petitioner submitted for mailing another motion to correct illegal sentence under Rule 3.800(a), which he later amended on November 5, 2012. (*Id.* at 239–53.) The circuit court denied Petitioner's amended motion on May 21, 2013. (*Id.* at 254–56.) The First DCA affirmed on November 27, 2013, and issued the mandate on December 26, 2013. (*Id.* at 273–75.)

On April 11, 2014, Petitioner submitted for mailing another motion to correct

illegal sentence under Rule 3.800(a)(b)(2), which was summarily denied on July 24,

2014. (ECF No. 8-4 at 121–30.) The First DCA affirmed on November 13, 2014, and

issued the mandate on December 9, 2014. (*Id.* at 138–39.)

Petitioner submitted the instant Petition to Union Correctional Institution ("UCI")

officials for mailing on February 9, 2015. (ECF No. 1 at 19.)[3]

## One-Year Limitation Period

Petitions filed after April 24, 1996, are governed by 28 U.S.C. § 2254, as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

*Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA created a limitations period

for petitions for writ of habeas corpus brought pursuant to § 2254:

> A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State
> court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws of the
> United States is removed, if the applicant was prevented from filing by
> such State action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1). However, the AEDPA tolls the 1-year limitation period for the

---

[3] Following the instant Petition, Petitioner submitted for mailing another motion
for post-conviction relief pursuant to Rule 3.850 on February 12, 2015. (ECF No. 8-4 at
at 141–51.) Petitioner's February 12, 2015 motion is still pending in the circuit court.
(ECF No. 8-1 at 4.)

time during which a properly filed application for State post-conviction or other collateral review is pending, and may be equitably tolled in appropriate "extraordinary circumstances." § 2244(d)(2); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).

## Discussion

As an initial matter, because Petitioner filed his Petition after April 24, 1996, his Petition is governed by § 2254 pursuant to the AEDPA. Thus, § 2244(d)(1) governs the limitations period in which Petitioner had to file his Petition. Pursuant to § 2244(d)(1)(A), Petitioner was required to file his Petition by March 17, 2014, but failed to do so until February 9, 2015. Therefore, his Petition for writ of habeas corpus is untimely.

To determine whether a petition was filed timely within one year of the conviction becoming final, the court must determine (1) when the prisoner filed the federal collateral petition, and (2) when the prisoner's judgment of conviction became final. *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999). Under the mailbox rule, a *pro se* prisoner's collateral petition is filed on the date it is delivered to prison authorities for mailing. *Id.* at 1341. A judgment of conviction becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted. *Atkins v. United States,* 204 F.3d 1086, 1089 n.1 (11th Cir. 2006). A petitioner has a 90-day period in which to file a *certiorari* petition with the Supreme Court of the United States before a judgment of conviction is deemed to have become final. *Nix v. Sec'y for the Dep't of Corrections*, 393 F.3d 1235, 1237 (11th Cir. 2004). "[T]he entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review . . . ." *Chavers v. Sec'y, Fla. Dep't of Corrections*, 468 F.3d 1273, 1275 (11th Cir. 2006). A state appellate court's *per curiam* affirmance of a

conviction is not reviewable by the Florida Supreme Court. Jackson v. State, 926 So. 2d 1262, 1265; *see also* Fla. Const. Art. V, § 3(b)(1). Thus, in these circumstances, the appellate court is the highest state court in which a prisoner can seek review and the prisoner should receive the benefit of the 90-day period. *See Chavers*, 468 F.3d at 1274-75.

In this case, Petitioner provided his Petition to UCI for mailing on February 9, 2015. (ECF No. 1 at 19.) December 24, 2014. (ECF No. 1 at 1.) Thus, as to the first prong under *Adams*, 173 F.3d at 1340–41, pursuant to the mailbox rule, Petitioner is deemed to have officially filed his Petition in this Court on February 9, 2015.

As to the second prong under *Adams*, 173 F.3d at 1340–41, the record is devoid of any evidence suggesting that Petitioner sought review from the Florida Supreme Court. Moreover, Petitioner was not entitled to seek review from the Florida Supreme Court due to the First DCA's *per curiam* affirmance. *See Jackson*, 926 So. 2d at 1265. Consequently, the Court must look to Petitioner's direct appeal to the First DCA to determine the date that Petitioner's conviction became final.

Petitioner directly appealed his conviction to the First DCA, which affirmed *per curiam* without opinion on September 16, 2008, and the mandate followed on October 2, 2008. (ECF No. 8-2 at 62–63.) Petitioner received the benefit of the 90-day period because the appellate court was the highest court in which he could seek review. *See Chavers*, 468 F.3d at 1274-75. Additionally, Petitioner's 90-day period began on the entry of judgment, September 16, 2008. *See id.* at 1275. Consequently, Petitioner's state conviction became final for AEDPA purposes on December 15, 2008, ninety days after the entry of judgment.

However, on November 28, 2008, before Petitioner's state conviction became final on December 15, 2008, Petitioner filed a motion to correct an illegal sentence pursuant to Rule 3.800(a)(b)(2). (ECF No. 8-2 at 76–82.)[4] The Court then granted his motion for voluntary dismissal on January 23, 2009. (ECF No. 8-2 at 9–11.) Although Petitioner's state conviction would have become final on December 15, 2008, the one-year limitations period was tolled until his November 28, 2008 motion was dismissed on January 23, 2009. As such, January 24, 2009 triggered the start of Petitioner's one-year period in which to file a habeas petition.

Petitioner's one-year period continued until July 13, 2009, when he filed a motion to correct sentence. (ECF No. 8-2 at 94–107.) A motion to correct an illegal sentence pursuant to Rule 3.800 operates to toll the limitation period under § 2244(d)(2). *Ford v. Moore*, 296 F.3d 1035, 1036, 1040 (11th Cir. 2002). Thus, Petitioner's July 13, 2009 motion to correct sentence tolled his one-year period. Between January 24, 2009, and July 13, 2009, 170 days elapsed on Petitioner's one-year clock.

Petitioner's tolled period ended on July 22, 2011, when the First DCA issued the mandate for its *per curiam* affirmance of the circuit court's denial of Petitioner's July 13, 2009 motion. (ECF No. 8-3 at 26–22.)[5] Accordingly, Petitioner's one-year clock

---

[4] Pursuant to the "mailbox rule," the date on which Petitioner submitted his motion for mailing is deemed to be the date of filing. *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (under the mailbox rule, a *pro se* prisoner's collateral petition is filed on the date it is delivered to prison authorities for mailing).

[5] Petitioner's August 11, 2009 motion for post-conviction DNA testing pursuant to Rule 3.853, filed while his July 13, 2009 motion to correct sentence was pending, has no effect on his AEDPA one-year limitation. *See Brown v. Sec'y for Dep't of Corrections*, 530 F.3d 1335, 1337 (11th Cir. 2008) (quoting § 2244(d)(2)) (a motion for post-conviction DNA testing pursuant to Rule 3.853 is not an "'application for post-conviction or other collateral review with respect to the pertinent judgment,' for

resumed on July 23, 2011, and ran for 52 days until September 13, 2011, when

Petitioner filed his motion to correct illegal sentence. (*Id.* at 32–37.)[6] Petitioner's one-

year period was tolled from September 13, 2011 through March 21, 2012, when the

First DCA issued the mandate for its *per curiam* affirmance of the circuit court's denial

of Petitioner's September 13, 2011 motion to correct illegal sentence. (*Id.* at 78–79.)

Thus, Petitioner's one-year clock resumed on March 22, 2012.[7]

Petitioner's one-year period ran untolled for 14 days from March 22, 2012 until

April 5, 2012, when he filed another motion to correct illegal sentence. (*Id.* at 222–24.)

Petitioner's one-year period remained tolled while his April 5, 2012 motion was pending

and resumed on August 29, 2012, the day after the First DCA issued the mandate

affirming the circuit court's denial. (*Id.* at 228–35.)[8]

---

purposes of the AEDPA tolling statute"). Similarly, Petitioner's March 11, 2010 motion for post-conviction relief pursuant to Rule 3.850 has no effect on his AEDPA one-year limitation because it was filed while his one-year period was already tolled under his July 13, 2009 motion and the circuit court denied his March 11, 2010 motion in the same order as the July 13, 2009 motion. *See* ECF No. 8-2 at 222–35.

[6] The AEDPA period resumed the day after the mandate from the First DCA issued. *See Cross v. McDonough*, No. 4:06cv460-RH/WCS, 2008 WL 817088, at *3 (N.D. Fla. Mar. 25, 2008) ("The AEDPA period began again on June 29, 2006, the day after the mandate from the First District Court of Appeal issued.").

[7] As of March 22, 2012, 222 days elapsed on Petitioner's one-year AEDPA clock. While Petitioner's September 13, 2011 motion was pending, he also filed an amended motion for post-conviction relief pursuant to Rule 3.850 on October 31, 2011, which the circuit court denied, and the First DCA affirmed and issued its mandate on March 20, 2012. However, the pending September 13, 2011 motion has no effect on Petitioner's one-year period because he already had another motion pending.

[8] While Petitioner's April 5, 2012 motion to correct illegal sentence was pending, he filed his June 15, 2012 motion to recall the mandate issued by the First DCA affirming the circuit court's denial of Petitioner's September 13, 2011 motion to correct illegal sentence. The Eleventh Circuit has not yet resolved whether a motion to recall a mandate tolls the applicable AEDPA limitation period. However, other courts have held

Petitioner's one-year period then ran untolled for 48 days from August 29, 2012

until October 16, 2012, when he filed another motion to correct illegal sentence under

Rule 3.800(a). (*Id.* at 239–45.)[9] Petitioner's clock remained tolled from October 16,

2012 through December 26, 2013, when the First DCA issued the mandate affirming

the circuit court's denial of Petitioner's amended motion to correct illegal sentence.[10] As

such, Petitioner's one-year clock resumed on December 27, 2013, and ran untolled for

105 days until April 11, 2014, when Petitioner filed yet another motion to correct illegal

sentence. (ECF No. 8-4 at 121–25.)  As of April 11, 2014, a total of 389 untolled days

elapsed on Petitioner's one-year AEDPA clock. Accordingly, Petitioner would have had

to file his habeas petition by March 17, 2014. Considering Petitioner did not file the

instant habeas petition until February 9, 2015, his petition is untimely under

§2244(d)(1)(A).[11] Further, none of the arguments or evidence presented suggests that

Petitioner's petition is timely under §§ 2244(d)(1)(B), (C), or (D). Thus, Petitioner's

---

that as long as the motion is properly filed, a motion to recall the mandate tolls the
limitation period. *See Marshall v. Sec'y, Dep't of Corrections*, No. 8:10-cv02366-T-
23MAP, 2013 WL 2382291, at *3 (M.D. Fla. May 30, 2013); *Bishop v. Dormire*, 526
F.3d 382–84 (8th Cir. 2008). Nonetheless, considering Petitioner's June 15, 2012
motion remained pending until the First DCA denied the motion on June 26, 2012, ECF
No. 8-3 at 80–87, this Court need not address the issue because his AEDPA one-year
period was already tolled based on his pending April 5, 2012 motion.

[9] As of October 16, 2012, 284 days had elapsed on Petitioner's one-year AEDPA
clock.

[10] Petitioner amended his October 16, 2012 motion to correct illegal sentence on
November 5, 2012. (*Id.* at 246–53.)

[11] Neither Petitioner's April 11, 2014 motion to correct illegal sentence nor his
February 12, 2015 motion for post conviction relief pursuant to Rule 3.850 revived his
AEDPA limitation period. *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004)
("A state court filing after the federal habeas filing deadline does not revive it.").

Petition is untimely under the AEDPA's one-year limitation period.

Petitioner argues that his one-year clock should be equitably tolled due to the fact that he was without his legal material for approximately six months from January 4, 2014, while he was placed in confinement at Jefferson Correctional Institution ("JCI"), through July 2014, after he was transferred to UCI. (ECF No. 17 at 4–5.) Petitioner states that he "submitted numerous inmate request[s] and informal grievances with [the] Jefferson C.O. property room and Law library to gain property to meet deadline[s]." (*Id.* at 4.) Further, Petitioner "submitted numerous inmate request[s] and informal grievances with Union C.O., to gain the property from Jefferson C.I. property room and law library clerk . . . ." (*Id.*) Petitioner contends that he had been diligently pursuing his rights and that these were circumstances beyond his control that caused his failure to meet the AEDPA deadline. (*Id.* at 4–5.)

"[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). However, "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied . . . ." *Id.* at 652. "The petitioner bears the burden of showing that equitable tolling is warranted. . . . . Conclusory allegations may be insufficient to support a claim that equitable tolling is appropriate." *Paulcin v. McDonough*, 259 F. App'x 211, 212 (11th Cir. 2007).

Although Petitioner's confinement and transfer allegedly prohibited him from having access to his legal materials during the three month period before his AEDPA limitation period expired, the Eleventh Circuit has repeatedly held that "lockdowns and

periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." *Id.* at 213 (citing *Dodd v. United States,* 365 F.3d 1273, 1283 (11th Cir. 2004); *see also Miller v. Florida*, 307 F. App'x 366, 368 (11th Cir. 2009); *Akins v. United States,* 204 F.3d 1086, 1089–90 (11th Cir. 2000). When a petitioner fails "to allege specifically or present evidence that his detention . . . . was extraordinary or anything other than routine," and when a petitioner "assert[s] only the conclusory allegation that he was denied access to the library and his records, but fail[s] to allege how his inability to obtain legal material thwarted his efforts to file a timely federal proceeding," the petitioner fails to show the requisite extraordinary circumstances to warrant equitable tolling. *Paulcin*, 259 F. App'x at 213.

In this case, Petitioner has failed to specifically allege or present evidence that his confinement at JCI was anything other than routine. Instead, Petitioner's indication that his confinement was "pending investigation," ECF No. 17 at 4, suggests that his confinement was indeed "routine."

Moreover, Petitioner fails to allege how his inability to access his legal material thwarted his efforts to timely file his Petition. In fact, Petitioner filed one of his many motions to correct illegal sentence on April 11, 2014. (ECF No. 8-4 at 121–28.) Although Petitioner may have been unable to access his legal materials from January 4, 2014 through July 2014, he was nonetheless able to pursue legal redress during the time he was without his legal materials, thereby failing to demonstrate the extraordinary circumstances required to warrant equitable tolling. *See Paulcin*, 259 F. App'x at 213 (noting that an inmates's ability to file an appeal of a denial of a Rule 3.850 motion during the time he allegedly had no access to his records or the law library "belies the

allegation that he was prevented from pursuing legal redress" after being transferred to county jail without his legal papers). Furthermore, although allegedly obtaining his legal materials in July 2014, Petitioner still failed to file his Petition until seven months later on February 9, 2015. (ECF No. 1.) Consequently, Petitioner has failed to demonstrate the requisite extraordinary circumstances to warrant equitable tolling of his AEDPA statute of limitations.

### Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. Respondent's Motion to Dismiss Petition for Habeas Corpus as Untimely, ECF No. 8, be **GRANTED** and the petition for writ of habeas corpus, ECF No. 1, should be **DISMISSED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 13th day of October, 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.